DANAHY, PAUL W., (Senior) Judge.
B.D.K. appeals his adjudication of delinquency for loitering and prowling and escape. He argues that there was insufficient evidence to sustain his adjudication for loitering and prowling. He also argues that his arrest for loitering and prowling was unlawful; that the unlawfulness of the arrest is an affirmative defense to the charge of escape; and that the trial court should have granted his motion for judgment of acquittal on that ground. We agree and reverse the adjudication of delinquency.
At the adjudicatory hearing, Deputy Waulk of the Pinellas County Sheriffs Office testified that while on patrol on September 26, 1997, at about 2 a.m., he observed two male youths walking down the sidewalk in a mixed business/residential area. The youths were dressed in dark clothing and were carrying backpacks. They were doing nothing other than walking. Deputy Waulk made a U-turn in his patrol car after he passed the youths. As the deputy began to make the turn, B.D.K. took off running while the other youth continued walking. Deputy Waulk called for back up and chased B.D.K. in his patrol car. However, B.D.K. was not apprehended at that point. He was arrested around 7:30 to 8:00 that same morning at the house of a friend. The arrest was presumably based on information obtained from B.D.K’s companion at the time B.D.K. fled. Detective Halle testified that he made the warrantless arrest for loitering and prowling based on information he received from Deputy Waulk. Detective Halle admitted that he had not observed any of B.D.K’s actions earlier that morning. Detective Halle handcuffed B.D.K. and transported him to the Sheriffs Office for questioning in relation to some burglaries. In the Sheriffs Office parking lot, B.D.K. ran from the car toward an open field before he was apprehended by another deputy.
At the adjudicatory hearing, B.D.K. moved for judgment of acquittal on the grounds that his actions, as testified to by Deputy Waulk, did not constitute a prima facie case of loitering and prowling. B.D.K. cited several cases in support of this argument. B.D.K. also moved for a judgment of acquittal on the escape charge on the ground that the State’s testimony established the affirmative defense that the arrest was unlawful. B.D.K. argued that his arrest was unlawful because it was made for a misdemeanor that did not occur in the presence of the arresting officer. He also argued that there was no probable cause to arrest him for loitering and prowling.
*1157 In J.S.B. v. State, 729 So.2d 456 (Fla. 2d DCA 1999), we held:
The State must prove two elements to sustain a conviction for loitering and prowling. First the accused must be loitering and prowling in a manner not usual for law abiding citizens; and, second, the loitering and prowling must be under circumstances that warrant a justifiable and reasonable alarm or concern for the safety of persons or property located in the vicinity. As to the first element the State must prove more than vaguely suspicious presence. As to the second, it must prove conduct that is alarming in nature, indicating an imminent breach of the peace or a threat to public safety.
729 So.2d at 457 (citation omitted). The suspect’s flight from the police may be considered in determining the presence of alarm or concern for the safety of persons or property. See § 856.021(2), Fla. Stat. (1997). In the present case, there was no evidence that B.D.K. was loitering or prowling in a manner not usual for law-abiding citizens. The juveniles were merely walking down the street. We conclude that the State did not prove the first element necessary to sustain the loitering and prowling charge. See W.A.E. v. State, 654 So.2d 193 (Fla. 2d DCA 1995) (fact that juvenile was walking on sidewalk at 2 a.m. in front of home where occupant had seen two males in the side yard “is in itself legally insufficient evidence of loitering and prowling”); K.R.R v. State, 629 So.2d 1068 (Fla. 2d DCA 1994) (evidence insufficient to sustain loitering and prowling conviction where juvenile walking on railroad tracks at 12:30 a.m., thirty yards from sight of recent attempted automobile theft). That B.D.K. fled from the deputy could be considered in determining whether there was an immediate concern for persons and property in the vicinity had he loitered or prowled at a time or in a manner unusual for law-abiding citizens. However, B.D.K.’s flight does not convert his otherwise lawful behavior into the crime of loitering and prowling.
Concerning the trial court’s finding that B.D.K. committed the offense of escape, we conclude that the arrest was unlawful because Detective Halle made a warrantless arrest for a misdemeanor that did not occur in his presence. See Smiley v. State, 354 So.2d 922 (Fla. 2d DCA 1978). The State argues that it is immaterial which officer arrested B.D.K. as long as all the elements of the crime occurred in the presence of one of the officers. Here, the State refers to what is commonly called the “fellow officer rule.” This rule allows an arresting officer to assume probable cause to arrest a suspect based on information supplied by fellow officers. The “fellow officer rule” applies to misdemeanors as well as to felonies. See Horsley v. State, 734 So.2d 525 (Fla. 2d DCA 1999). However, in this case we conclude that the “fellow officer rule” is inapplicable. Section 901.15(1), Florida Statutes (1997), states that a law enforcement officer may arrest a person without a warrant when he or she has committed a misdemeanor in that officer’s presence. It goes on to state: “An arrest for the commission of a misdemeanor ... shall be made immediately or in fresh pursuit.” Here, the acts for which B.D.K. was arrested occurred around 2 a.m. Around 8 a.m. that same morning, Detective Halle responded to a specific address to arrest B.D.K. Clearly, the arrest was not immediate; nor was it in fresh pursuit. Because we conclude that the arrest was unlawful on this basis, we do not address the issue of whether there was sufficient probable cause to arrest B.D.K. for loitering and prowling.
The unlawfulness of the confinement is an affirmative defense that can be raised by a defendant charged with escape. See State v. Williams, 444 So.2d 13 (Fla.1984). In passing on a motion for judgment of acquittal where a defendant has asserted an affirmative defense, “the proper test is to determine, first, whether the defendant produced competent evidence of an affirmative defense and, second, wheth *1158 er the state has carried its burden of contradicting that evidence to the extent that a jury issue is made.” Williams v. State, 468 So.2d 447, 449 (Fla. 1st DCA 1985). In this case, B.D.K. presented no evidence. However, the evidence presented by the State established B.D.K.’s affirmative defense to the escape charge based upon the unlawfulness of the arrest. See Collett v. State, 676 So.2d 1046 (Fla. 1st DCA 1996) (State’s evidence in burglary case established affirmative defense that premises in question were open to the public and trial court erred in denying defendant’s motion for judgment of acquittal on this basis). The trial court erred in denying B.D.K.’s motion for judgment of acquittal on the escape charge.
Accordingly, we reverse the order of adjudication of delinquency and remand to the trial court with instructions to discharge B.D.K.
PARKER, A.C.J., and GREEN, J., Concur.