809 So.2d 75 (2002)
STATE of Florida, Appellant,
v.
Clinton ADDERLY, Appellee.
No. 4D01-2170.
District Court of Appeal of Florida, Fourth District.
February 13, 2002.
Rehearing Denied March 20, 2002.
Robert A. Butterworth, Attorney General, Tallahassee, and Maria J. Patullo, Assistant Attorney General, West Palm Beach, for appellant.
Mitchell B. Polay, Fort Lauderdale, for appellee.
STEVENSON, J.
Clinton Adderly was charged with trafficking in cocaine. Adderly filed a motion to suppress, which the trial judge granted. Because the traffic stop which led to the discovery of the contraband was proper, we reverse.
At the suppression hearing, Matt Baldwin, a detective with the Broward County Sheriff's Office, testified that on February *76 19, 2001, he was involved in an operational plan for traffic enforcement. The officers were watching a stop sign at the intersection of 4100 Northeast 4th Terrace, due to citizen complaints regarding drivers failing to stop there. Deputy Baldwin was the "point person" and was conducting surveillance from up in a tree at the intersection. When Baldwin observed a vehicle run the stop sign, he would radio its description to backup units that were dispersed in the neighborhood within a few blocks of the stop sign, and it was their job to make the actual stop. According to Deputy Baldwin, "we had the neighborhood basically surrounded with marked cars for the purposes of stops."
Deputy Baldwin observed a dark Chevy Impala run the stop sign. He radioed to the backup units and "notified them of the traffic infraction and told them the direction the car was then heading and asked one of them to stop the vehicle." In police jargon, this type of communication is often referred to as a "BOLO," an acronym for "be on the lookout." Deputy Lapier, a backup officer in the area, was only a few blocks away, and subsequently stopped Adderly's burgundy or maroon Chevy Impala. Deputy Doriot, another backup officer, testified that he heard the BOLO and, within seconds, heard Lapier initiate the stop. Doriot, a K-9 officer, responded as a backup to Lapier. Less than thirty seconds after the BOLO was communicated, Deputy Doriot pulled alongside Deputy Lapier's car as she was getting out to obtain the driver's information. The stop was made approximately one and a half blocks away from the stop sign.
At the hearing, the trial judge expressed concern that Deputy Baldwin did not come down from the tree to verify that the vehicle stopped was actually the vehicle he observed commit the infraction. After all of the evidence was presented, the trial judge stated:
I have to grant the motion.... If the deputy would have come down from the tree, said that was the car, it would have been fine.... But you can't lose sight of the vehicle to be stopped.
Thus, the trial judge granted the motion to suppress and ruled that the stop was improper only because Deputy Baldwin failed to go to the location where the vehicle was stopped so that he could personally identify it.
We find that the legal rationale underpinning the trial judge's ruling was erroneous since there was no requirement that Deputy Baldwin "come down from the tree" and personally identify the vehicle; here, the "fellow officer rule" was distinctly applicable.
The "fellow officer" rule or doctrine "operates to impute the knowledge of one officer in the chain of investigation to another." State v. Evans, 692 So.2d 216, 218 (Fla. 4th DCA 1997). As stated in Crawford v. State, 334 So.2d 141, 142 (Fla. 3d DCA 1976), an "arresting officer is not required to have sufficient firsthand knowledge to constitute probable cause. It is sufficient if the police officer initiating the chain of communication... had first hand knowledge."
Huebner v. State, 731 So.2d 40, 44 (Fla. 4th DCA 1999); see also Ferrer v. State, 785 So.2d 709, 711 (Fla. 4th DCA 2001)(same).
Additionally, the fact that Deputy Lapier was unavailable to testify at the suppression hearing was not fatal to the State's attempt to establish the validity of the stop. The running of the stop sign, Deputy Baldwin's radio transmission, Deputy Lapier's stop of the vehicle, and Deputy Doriot's arrival on the scene as backup to Deputy Lapier, all took place within *77 seconds and ranged a distance of only one and a half blocks.
"Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer that the ultimate facts in dispute existed or did not exist. The conclusion as to the ultimate facts must be one which in the common experiences of men may reasonably be made on the basis of the known facts and circumstances. Wharton's Criminal Evidence, Sec. 6."
Davis v. State, 436 So.2d 196, 198 (Fla. 4th DCA 1983)(quoting Davis v. State, 90 So.2d 629, 631 (Fla.1956)).[1] Here, the circumstantial evidence was adequate to support the conclusion that Deputy Lapier heard, and relied upon, Deputy Baldwin's radio call in making the stop.
Accordingly, the trial court's order granting the motion to suppress is reversed and this cause remanded for further proceedings.
STONE, J., concurs.
TAYLOR, J., dissents with opinion.
TAYLOR, J., dissenting.
I respectfully dissent. I would affirm the order granting appellee's motion to suppress, because the state failed to present evidence that the officer who actually conducted the traffic stop of appellee's vehicle based the stop upon probable cause information communicated to her under the "fellow officer rule."[2]
Deputy Lapier, who stopped appellee's vehicle for the traffic violation, did not testify at the suppression hearing. Further, the state did not elicit testimony from any other witness that Deputy Lapier received the radio transmission concerning the traffic violation and based her stop upon that information.
This case is distinguishable from Ferrer v. State, 785 So.2d 709 (Fla. 4th DCA 2001). There, the officer who conducted the traffic stop failed to appear and testify at the suppression hearing. However, the state presented the hearsay testimony of another officer that the officer who made the stop told him that he stopped the defendant because of a tip he had received and a traffic violation he had observed. We held that the officer's hearsay testimony was properly admitted under the fellow officer rule and was sufficient to validate the initial stop of defendant.
In this case, there was no testimony from anyone that Deputy Lapier actually heard or relied upon Officer Baldwin's BOLO in stopping appellee. We can only speculate on that point. No matter how strongly the circumstances may suggest that the deputy heard the BOLO and acted upon it, without any direct evidence that she did, the fellow officer rule does not assist the state in establishing probable cause for the traffic stop. I would therefore affirm the order granting the motion to suppress.
NOTES
[1] Of course, when circumstantial evidence is used to establish guilt, it is subject to a much more rigorous standard and, in that situation, must not only be consistent with the defendant's guilt but must also be inconsistent with any reasonable hypothesis of innocence. See Davis, 436 So.2d at 198.
[2] Although this may not be the reasoning upon which the trial court based its decision, the court's ruling will still be upheld if there is any theory or principle of law in the record which would support the ruling. See Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999); Applegate v. Barnett Bank, 377 So.2d 1150, 1152 (Fla. 1979).