FORST, J.
After a bifurcated trial, Appellant Elton Lowery was convicted of second degree murder, two counts of attempted first degree murder, and possession of a firearm by a convicted felon. He raises four issues on appeal. We affirm without further discussion with respect to two of Appellant’s arguments. As discussed below, we further affirm the trial court’s decision to deny Appellant’s motion to suppress statements he made during a custodial interrogation. We reverse with respect to the trial court’s decision to permit Appellant to represent himself during the second part of the bifurcated trial dealing with the felon-in-possession charge.[1] This matter is remanded for a new trial solely with respect to the felon-in-possession charge.
*793 Background
In late 2009, Appellant was seen in a hospital emergency room with a facial injury. He told a nurse that he had been pistol whipped. He indicated to the nurse as well as two police officials that he planned to get revenge on the individuals responsible for his injury, telling one detective that he was “going to get [his] pistol and kill those [expletive].” On the same day Appellant made that statement, shots were fired at four individuals. One was killed, and two others injured. The fourth individual, in pretrial statements, identified Appellant as the shooter, as did an individual who witnessed the shooting.
The following day, Appellant was interviewed by the same detective to whom Appellant had made the threat on the morning of the shooting. Appellant admitted being at the scene when the shooting started, but denied being the shooter. He was not arrested and, upon the detective’s request, voluntarily returned to the police station on a later date. Appellant was read his Miranda, rights[2] before this second interview, acknowledged that he understood his rights, signed the waiver, and agreed to speak with the detectives. During the interrogation, Appellant told the detectives, “Alright, check this out, if I ain’t under arrest, I want to leave.” He was then informed that he was under arrest, and continued to talk to the detectives. The trial court denied Appellant’s motion to suppress his statements made after the “I want to leave” comment.
The jury returned verdicts of guilty with respect to the shootings of three of the four individuals, and it also found that Appellant possessed a firearm at the time of the shooting (consistent with Appellant’s admission during questioning by the detectives). The trial court then commenced a bifurcated trial to determine whether Appellant was a felon in possession of a firearm. Before this trial started, Appellant fired his attorneys and moved to disqualify the judge. The trial court denied the disqualification motion and informed Appellant that the second trial would commence.
Appellant expressed concern over the fact that he had no lawyers, but refused to proceed with his trial lawyers. The trial court then gave Appellant two options: dismiss his attorneys and represent himself or fire them and convince the judge he did so because they provided ineffective assistance of counsel. If he were able to do the latter, the trial judge would appoint another lawyer. Appellant stated multiple times that he was incompetent and could not represent himself; however, he decided to proceed pro se. After testimony and evidence, the jury found Appellant was a previously convicted felon and was in possession of a firearm on the date of the shootings.
Analysis
A. The trial court did not err in denying Appellant’s motion to suppress.
We review a trial court’s ruling on a motion to suppress with a mixed standard of review. Luna v. State, 154 So.3d 1181, 1183 (Fla. 4th DCA 2015). “The appellate court defers to the trial court’s findings regarding the facts and uses the de novo standard of review for legal conclusions.” Id. (quoting Nshaka v. State, 82 So.3d 174, 178-79 (Fla. 4th DCA 2012)). However, “[a] trial court’s ruling on a motion to suppress is presumed correct, and on appeal, the evidence from the suppression hearing must be interpreted in a manner most favorable to sustaining the court’s ruling.” Dixon v. State, 72 So.3d 171, 174 (Fla. 4th DCA 2011).
*794 Appellant moved to suppress statements made to the detectives at his second interview. He argued that his statement made at the beginning of the interrogation, that he wanted to leave, was an unequivocal and unambiguous, invocation of his right to remain silent. Thus, he maintains, the detectives should have ceased the interrogation at that point and any statements made after that point were illegally obtained and should be suppressed.
Once Miranda rights have been read, if the suspect “indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.” Cuervo v. State, 967 So.2d 155, 161 (Fla.2007) (quoting Miranda, 384 U.S. at 473-74, 86 S.Ct. 1602). “ ‘[I]n any manner’ simply means that there are no magic words that a suspect must use to invoke his rights.” Pierre v. State, 22 So.3d 759, 767 (Fla. 4th DCA 2009) (citing State v. Owen, 696 So.2d 715, 719 (Fla.1997)). However, police do not need to “ ‘ask clarifying questions if a defendant who has received proper Miranda warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived his Miranda rights.’ ” Cuervo, 967 So.2d at 162 (emphasis omitted) (quoting Owen, 696 So.2d at 719). “Whether a response is equivocal is an objective question based on the circumstances.” Womack v. State, 42 So.3d 878, 883 (Fla. 4th DCA 2010) (citing Cuervo, 967 So.2d at 163 n. 7).
Appellant relies on State v. DuPont, 659 So.2d 405 (Fla. 2d DCA 1995), in arguing that he had invoked, and not rescinded, his right to remain silent. In DuPont, the defendant went to the police station at the request of the detectives to answer questions regarding a murder. Id. at 406. About two hours after the detectives read him his Miranda rights, the defendant became angry and said he wanted to leave. Id. at 407. The detectives told him at least three times that he could leave if he wanted to, but the defendant did not leave or make any statements. Id. “After a brief pause, the conversation resumed.” Id. The trial court suppressed the defendant’s statements made after his request to leave. Id. at 406-07. On appeal, the Second District agreed with the State’s argument that, “after initially invoking Miranda rights, a suspect may again waive those rights by initiating conversation with police.” Id. at 407. However, the court found the defendant’s request to leave was an unequivocal request to end the interrogation. Id. The police erroneously failed to stop the interview and it was the police, not the defendant, who reinitiated the conversation. Id. Thus, the Second District held that any statement the defendant made after he indicated he wanted to leave was properly suppressed. Id.
In the instant case, Appellant voluntarily went to the police station to answer questions at the request of the detective with whom he had previously spoken. Not long after he was read his Miranda rights, and while he was being handcuffed, Appellant stated that if he was not under arrest, he wanted to leave. Appellant then asked, “Am I under arrest?” to which the detectives stated, ‘You’re under arrest.” This exchange was not in response to any specific questions regarding the crimes. Appellant then stated, “Alright, thank you sir. Alright at this point, I’m gonna tell y’all this right here, it’s not.... ” Appellant then resumed talking to the detectives, making no indication that he desired to remain silent.
The trial court appropriately denied Appellant’s motion to suppress. The statement that he relied upon for that motion was equivocal—he wanted to leave (and thus not speak to the police) if he was not under arrest. Upon learning that he was *795 under arrest, it was Appellant who reinitiated the conversation with the detectives. Under these circumstances, the detectives were not obligated to ask clarifying questions. See Cuervo, 967 So.2d at 162. We find no basis to reverse the trial court with respect to its ruling.
B. The trial court erred in failing to conduct the proper inquiry prior to permitting Appellant to proceed without counsel for the second.part of the bifurcated trial.
A defendant has the constitutional right to represent himself, as long as his decision to do so is knowingly made, intelligent, and voluntary. Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A defendant may waive his right to counsel and represent himself. Hayes v. State, 566 So.2d 340, 342 (Fla. 2d DCA 1990). However, the trial court “must ensure that the defendant is literate, competent, and understanding, and that his choice is informed and voluntary.” Id. It must also inform the defendant of the benefits and disadvantages of self-representation. Id. “The best method to ascertain whether the waiver is validly given is to conduct a separate pretrial hearing so the record will support a. waiver.” Hardy v. State, 655 So.2d 1245, 1247 (Fla. 5th DCA 1995).
“A trial court’s decision as to self-representation is subject to an abuse of discretion.” Id. “However, a trial court’s failure to conduct a Faretta hearing prior to allowing a defendant to appear without counsel is per se reversible error.” Sparaga v. State, 111 So.3d 260, 263 (Fla. 1st DCA 2013).
Here, the trial court did not conduct any sort of inquiry to determine whether Appellant’s decision to proceed without counsel was knowingly made, intelligent, and voluntary. The trial court did not ensure Appellant was literate, competent, and understanding. . In fact, Appellant told the trial court that he had dyslexia, ADHD, took “crazy pills,” and was incapable of representing himself. It is clear from the record that the trial court did not conduct ah adequate Faretta inquiry to determine whether Appellant’s decision to represent himself was knowingly made, intelligent, and voluntary. Thus, this was “per se reversible error.”
Conclusion
Due to the trial court’s failure to adequately conduct a Faretta inquiry prior to allowing Appellant to appear without counsel during the bifurcated trial with respect to the firearm charge, we reverse for a new trial. However, because Appellant was represented by counsel during the first part of the trial that dealt with the murder and attempted murders, and only proceeded pro se during the bifurcated firearm trial, we reverse only as to the bifurcated trial on the possession of firearm by convicted felon charge. The trial court’s judgment is otherwise affirmed.

Affirmed in part, reversed in part, and remanded.

CIKLIN, C.J., and CONNER, J., concur.

. Appellant was represented by counsel during the first part of the bifurcated trial.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).